# CASE CLOSED

**CASE NUMBER:** 3:05-CV-762-M

**DATE:** 08/22/06

**TRIAL:** **YES** ______ **NO** X




IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DRUID GROUP, INC., Plaintiff, | § | |
| v. | § | Civil Action No. 3:05-CV-00762-M |
| LEE DORFMAN, individually and d/b/a ADEPT OF SAN FRANCISCO, Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Motion to Transfer Venue. The Court **DENIES** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and **GRANTS** the Alternative Motion to Transfer Venue. The Court **TRANSFERS** the case to the Northern District of California.

BACKGROUND

In 1997, Richard Jackson ("Jackson"), president of Druid Group, Inc. ("Druid" or "Plaintiff"), created Cyber Secretaries, which provided a service through which customers could dictate documents for transcription by accessing a toll-free telephone number, email or facsimile. *See* May 13, 2005 Declaration of Richard Jackson in Support of Motion to Dismiss for Lack of Personal Jurisdiction, and, in the Alternative, Motion to Transfer Venue under 28 U.S.C. § 1404(a), filed in *Dorfman v. Jackson et al.*, No. 05-1791 PJH (N.D. Cal.), ¶ 2, pp. 1-2, included

in Pl. Appx. as Exhibit A, pp. 1-6. By 1999, Cyber Secretaries operated out of Dallas and Whitefish, Montana. *Id.* ¶ 7, pp. 2-3. By 2001, the business was operating solely out of Montana. *Id.* In 2005, its primary management function was moved to Austin, Texas. *Id.*

On June 21, 1999, Druid, d/b/a Cyber Secretaries, entered into a joint venture agreement ("JVA") with Adept of San Francisco ("Adept"),[1] headed by Lee Dorfman ("Dorfman"). Adept was to provide dictation services through its own brand, iDictate, and to outsource its transcription services to Cyber Secretaries.[2] *See* JVA p. 7, included in Pl. Appx. as Exhibit B, pp. 7-15. Under the JVA, Cyber Secretaries could continue to promote its own dictation brand, YouDictate, but in order to prevent Cyber Secretaries from "stealing" iDictate's customers, Cyber Secretaries could not reveal to iDictate customers that iDictate outsourced its transcription services to Cyber Secretaries. *See* JVA ¶¶ 12-13, p. 9. To conceal Cyber Secretaries' involvement, the JVA specified that Cyber Secretaries would form a separate company, C/S Dorfman Operating Co., Inc. ("C/S Dorfman"), which would provide transcription services to Dorfman's iDictate customers. *See id.* at p. 7. The JVA provided for Arizona law to govern any disputes between the parties, and it included a clause requiring the parties to mediate before initiating litigation. *Id.* ¶ 16 and ¶ 18, p. 10.

In 2000, the parties had a dispute regarding marketing expenses. Jackson claimed Dorfman agreed to spend $50,000 per month on marketing and advertising C/S Dorfman/Cyber Secretaries' services. *See* February 11, 2000 Letter from Jackson to Dorfman, included in Pl.

---

[1]Adept appears to be Dorfman's d/b/a, not a new corporation, so jurisdiction must be founded on actions related to Dorfman.

[2] Jackson and Dorfman differ as to how their relationship and the subsequent joint venture were initiated. However, both agree a contract was formed.

Appx. as Exhibit D, pp. 19-21. Dorfman claimed the $50,000 amount was simply an estimate. *See* January 7, 2000 Letter from Dorfman to Jackson, included in Def. Supp. Appx. in Attachment E, pp. 191-92; *see also* February 9, 2000 Letter from Dorfman to Jackson ("Feb. 9, 2000 Letter"), included in Def. Supp. Appx. in Attachment E, pp. 194-99. Dorfman additionally claimed that Jackson cut off his access to the iDictate website, virtually shutting down his dictation business. *See* Feb. 9, 2000 Letter, p. 194. Dorfman and Jackson apparently resolved this dispute with an amended JVA, which provided that Dorfman would give Druid weekly reports with specific information regarding Dorfman's sales efforts and expenditures. *See* February 16, 2000 Addendum to JVA, included in Pl. Appx. as Exhibit C, p.18.

Dorfman claims that in March 2005, Jackson shut down C/S Dorfman/Cyber Secretaries' services to iDictate and refused to mediate. *See* September 14, 2005 Declaration of Lee Dorfman filed in the present case, ¶ 17, p. 4, included in Def. Appx, pp. 1-8. On March 21, 2005, Dorfman filed suit in California state court ("California case") and obtained a preliminary injunction, prohibiting Jackson from cutting off Dorfman's clients' access to iDictate, and from deliberately delaying iDictate customers' jobs. The California case was removed to federal court, then transferred to the District of Montana. It has since been transferred back to the Northern District of California, where it is presently pending.

On April 14, 2005, C/S Dorfman filed another suit against Dorfman in the District of Montana ("Montana case"), alleging breach of contract, fraud, defamation, breach of fiduciary duty, and tortious interference with contract. The Montana case was transferred to the Northern District of California before being dismissed on January 24, 2006.

On April 19, 2005, Druid brought this action against Dorfman, individually and d/b/a

Adept, for breach of contract, violations of the Texas Deceptive Trade Practices Act, business disparagement and defamation, breach of fiduciary duty, tortious interference with contract and business relations, unlawful misappropriation and conversion, and fraud and misrepresentation, seeking damages and a declaratory judgment. On March 1, 2006, Dorfman filed a Rule 12(b) Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, to Transfer Venue.

A. PERSONAL JURISDICTION

STANDARD OF REVIEW

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over the nonresident. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Dorfman does not reside in Texas. Therefore, Druid has the burden of establishing personal jurisdiction over Dorfman.

The Court may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute supports personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the Constitution's due process requirements. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir.2002). Because the Texas long-arm statute reaches to constitutional limits, the Court need only engage in the due process analysis. *Id.* at 470. Personal jurisdiction over a non-resident defendant comports with the requirements of due process if (1) the nonresident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Lewis*, 252 F.3d at 258.

Although "minimum contacts" may be established with a showing of specific jurisdiction or general jurisdiction, Druid seeks to assert only specific jurisdiction over Dorfman.[3] In order to assert specific jurisdiction over Dorfman, Druid must show that Dorfman's contacts in Texas arise from, or are directly related to, the causes of action asserted. *Id.* The Court must conduct the minimum contacts analysis separately for each cause of action asserted, because Plaintiff is obligated to secure jurisdiction over Dorfman with respect to each claim brought. *See Dockery v. America's Platinum Privileges, Inc.*, 3:03-CV-1901-M, 2004 WL 1196067, at *1 (N.D.Tex. May 28, 2004) (Lynn, J.); *Denmark v. Tzimas*, 871 F.Supp. 261, 266 (E.D.La.1994); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 1069.7 (2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

ANALYSIS

Druid, who caries the burden of making a prima facie showing of personal jurisdiction, alleges that Dorfman is subject to specific jurisdiction in Texas because Dorfman induced Druid to enter into the JVA by making misrepresentations to Druid regarding the effort and money that Dorfman would put into marketing and advertising C/S Dorfman's service, and C/S Dorfman and Druid detrimentally relied upon such representations, in Texas. Under the Texas long-arm statute, a nonresident who does business in Texas is subject to suit in Texas. Section 17.042(2)

---

[3] Druid does not allege continuous, systematic contacts with Texas that could support an exercise of general jurisdiction. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

of the Texas Civil Practice and Remedies Code provides that "a nonresident does business in this state if the nonresident...(2) commits a tort in whole or in part in this state... ." Druid contends that Dorfman committed a tort in Texas. In *Calder v. Jones,* 465 U.S. 783, 789-90 (1954), the Supreme Court recognized that "when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions." *Calder v. Jones,* 465 U.S. 783, 789-90 (1984).

The alleged misrepresentations Dorfman made to Druid, a Texas corporation, were "expressly aimed" at Druid. Whether Dorfman knew that the "brunt of the injury" would be felt in Texas must be determined from the facts alleged in this case. Personal jurisdiction is a question of law for the court, even if it involves resolving questions of fact. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777 (Tex. 2005).

Dorfman acknowledges that he understood throughout the negotiations that he was dealing with a Texas corporation doing business in Texas.[4] In making the alleged misrepresentations to a Texas corporation, Dorfman reasonably should have known that the "brunt of the injury" caused by his representations would likely be felt in Texas. The Court concludes that Dorfman's contacts with Texas are constitutionally sufficient to establish specific jurisdiction over him.

---

[4] This information comes from the Northern District of California's Order Granting Motion to Transfer Case, which is included in Pl. Appx. as Exhibit H, at p. 72 and in Def. Appx. to 12(b)(6) Motion to Dismiss, at p. 62.

B. VENUE

STANDARD OF REVIEW

Because federal jurisdiction in this case is based solely upon diversity of citizenship, venue lies properly in a judicial district (1) where any Defendant resides, if all Defendants reside in the same state; (2) where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) in which any Defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. Neither individually nor as Adept does Dorfman reside in the Northern District of Texas. As described below, there is at least one other judicial district in which this action may have otherwise been brought. Though there is evidence that Druid d/b/a Cyber Secretaries operated out of Dallas, at least in part, from 1999 to 2001, the Court is unable to conclude from the record that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in the Northern District of Texas. Accordingly, the Northern District of Texas is an improper venue for this case as long as there is another district where the suit could be brought (and as further analyzed below, there is). However, even if this District is an improper venue, that does not necessitate the dismissal of Plaintiff's case.

Where venue is improper, the Court has discretion to transfer the case to a district in which it could have been brought. *See Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967); *see also Burr v. Transohio Savings Bank*, No. 95-20144, 1995 WL 798590, at *4 (5th Cir. 1995)(unpublished). After conducting a balancing test weighing the factors in favor of transferring this case, the Court determines it would be in the interest of justice to transfer the

case to the Northern District of California pursuant to 28 U.S.C. § 1406(a).

Even if this District were a proper venue, the Court would nonetheless transfer the case to the Northern District to California pursuant to 28 U.S.C. § 1404(a). The Court evaluates a Motion to Transfer Venue under that section based upon the following factors: (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the availability of process to compel the presence of unwilling witnesses, (4) the cost of obtaining the presence of witnesses, (5) the relative ease of access to sources of proof, (6) calendar congestion, (7) the location of the events in issue, and (8) the interests of justice in general. Woolf v. Mary Kay Inc., 176 F.Supp.2d 642, 647 (N.D. Tex. 2001) (Fish, J.); *see also Ins. Co. of the West v. Ft. Worth Indep. School Dist.*, 3:05-CV-1879-M, 2005 WL 3453959, at *1 (N.D. Tex. Dec. 15, 2005) (Lynn, J.). The Court considers these same factors in making its assessment under 28 U.S.C. § 1406(a).

ANALYSIS

In determining if a case should be transferred under 28 U.S.C. § 1406(a), the Court must first determine whether the judicial district to which transfer is sought is a district in which the claims could have been filed. The claims in this case could have been brought in the Northern District of California where the Defendant resides. Further, a substantial part of the events giving rise to the claim occurred in that district. Additionally, Druid could have brought its claims in this case as compulsory counterclaims in the California action, pursuant to Fed. R. Civ. P. 13(a).

After determining that the district to which transfer is sought is a district where the case

could have been brought, the Court balances the eight factors set out above. Since the California case, which was transferred to the District of Montana, has been transferred back to the Northern District of California, interests of judicial economy merit a transfer of this case to the Northern District of California, where it could be consolidated with the California action. In addition, Dorfman has identified thirty-four non-party potential witnesses, at least thirty-three of whom reside in California; the vast majority reside in the Northern District of California. Def. Appx. at 84-86. Plaintiff identifies four likely witnesses, including Jackson. Each of these four individuals resides in Austin, Texas, in the Western District of Texas. Though Plaintiff argues that the transfer of this case to California would merely serve to shift expense and inconvenience from one party to the other, the Court finds that the sheer number of witnesses located in California, as well as the fact that all four people identified by Plaintiff are employees of Druid, makes clear that transfer to the Northern District of California would aid in obtaining process to compel witnesses and reduce the cost of obtaining the presence of those witnesses. The other factors do not change the Court's conclusion that the case should be transferred to the Northern District of California. No party contends that there is a material difference in the congestion of the Court calendars in the Northern District of Texas and the Northern District of California.

## CONCLUSION

Although the Court has personal jurisdiction over Dorfman and the Northern District of Texas is a proper venue, transfer of this case to the Northern District of California is warranted, to serve the interests of justice, and to avoid duplicative litigation on claims arising from a single transaction or occurrence. The Court thus **GRANTS** Defendant's Alternative Motion to

Transfer, and **ORDERS** the Clerk to transfer and reassign this case to the District Court for the Northern District of California.

**SO ORDERED.**

August 22, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS